UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-22201-CIV-GARBER

In the Matter of the Extradition of
SHLOMO BEN-TOV a/k/a Sam Goodson.

_____/

## ORDER VACATING CERTIFICATE OF EXTRADITABILITY

THIS CAUSE comes before the Court upon defendant Shlomo Ben Tov's Motion to Reopen Proceedings. For the following reasons, upon due consideration of the motion, the government's response, the defendant's reply and the government's sur-reply, and after a hearing held on February 7, 2006, the motion is GRANTED WITHOUT PREJUDICE.

### Procedural History

On August 15, 2005, pursuant to this Court's provisional arrest warrant, Ben-Tov was arrested. On September 12, 2005, the government filed the Dominican Republic's formal request for extradition. On September 23, 2005, this Court held an extradition hearing at which both the government and Ben-Tov offered evidence. On October 21, 2005, this Court issued its Order Granting Certificate of Extraditability, relying on the evidence submitted by the Dominican Republic [DE 42]. This Court stayed execution of the order pending Ben-Tov's filing a petition for habeas corpus, which was filed on November 7, 2005 (Ben-Tov v. Warden, FDC, Case No. 05-22880-Civ-Highsmith/McAliley). While that petition was pending before the District Court, Ben-Tov filed a motion to reopen extradition proceedings based on newly discovered evidence [DE 47]. On February 7, 2006, after the motion was fully briefed, this Court held a hearing.



**Legal Standard**

1. <u>Probable Cause</u>.

As more fully set forth in this Court's order granting certificate of extraditability [DE 42], pursuant to Title 18, United States Code, section 3184, this Court must determine whether the evidence submitted in support of extradition is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. The standard of proof is probable cause. *See Afanasjev v. Hurlburt* 418 F.3d 1159, 1164 (11th Cir. 2005) (observing that "the Government d[oes] not have to show actual guilt, only probable cause that the fugitive is guilty"). In determining whether probable cause exists, "the credibility and weight of the evidence are exclusively within the discretion of the Magistrate Judge." *United States v. Fernandez-Morris,* 99 F. Supp.2d 1358, 1361 (S.D. Fla. 1999).

"Probable cause means that there is evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the guilt of the accused." *Coleman v. Burnett,* 477 F.2d 1187, 1202 (D.C. Cir. 1973). As the United States Supreme Court has observed, the Magistrate Judge "should not accept without question the complainant's mere conclusions that the person whose arrest is sought has committed a crime." *Giordenello v. United States,* 357 U.S. 480, 486 (1958). The Magistrate Judge should not "serve merely as a rubber stamp." *Aguilar v. Texas,* 378 U.S. 108, 111 (1964).

The defendant's right to present evidence at an extradition hearing is severely limited, however. He may only present evidence that explains, rather than contradicts, the demanding country's proof. *See Hooker v. Klein,* 573 F.2d 1360, 1368 (9th Cir.), *cert. denied,* 493 U.S. 932 (1978). Explanatory evidence is "reasonably clear-cut proof which would be of limited scope and

2

[has] some reasonable chance of negating a showing of probable cause." *In the Matter of Sindonna*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978). Likewise, evidence that tends to "obliterate" probable cause should be considered. *Shapiro v. Ferrandina*, 355 F. Supp. 563, 572 (S.D.N.Y.), *aff'd*, 478 F.2d 894 (2d Cir.), *cert. dismissed*, 414 U.S. 884 (1973). Further, "When an individual seeks to present evidence that negates *all* bases for probable cause, such evidence must be admitted, because if the individual can successfully show the court that all bases for charging him are unreliable, then there is no evidence to support his extradition." *Maguna-Celaya v. Haro*, 19 F.Supp.2d 1337 (S.D.Fla.1998). "Thus, it has been held appropriate to permit evidence that tends to obliterate probable cause . . . ." *In re Extradition of Mainero*, 990 F.Supp. 1208, 1218-19 (S.D.Cal. 1997).

Evidence that a witness has recanted his testimony is similarly admissible for this same reason. *See Republic of France v. Moghadam*, 617 F. Supp. 777, 781 (D. Cal. 1985). The extent to which the defendant may offer such explanatory evidence is largely within the discretion of the Court. *See id.* at 1369.

If the evidence does not amount to probable cause "and the requesting state's allegations are nothing more than suspicions ... the request must be denied." *Fernandez-Morris*, 99 F. Supp.2d at 1366.

    2.    <u>Federal Rule of Civil Procedure 60(b)</u>.

An extradition proceeding is a civil case, governed by the Federal Rules of Civil Procedure. *See Fernandez-Morris*, 99 F. Supp.2d at 1366 ("An extradition hearing is not conducted under the Federal Rules of Criminal Procedure and generally is not considered a criminal proceeding."). Federal Rule of Civil Procedure 60(b) ("Relief from Judgment or Order") permits a party to seek relief from a final order based either on newly discovered evidence or fraud upon the Court:

3

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ... misrepresentation, or other misconduct of an adverse party.

Fed. R. Civ. P. 60(b). The pendency of an "appeal" in the form of a habeas petition before the District Court does not divest the Magistrate Judge of jurisdiction to consider a Rule 60 motion:

> [T]he pendency of an appeal does not affect the district court's power to grant Rule 60 relief. . . . Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court.

*Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 401 (1995); *Standard Oil Co. of California v. United States*, 429 U.S. 17, 17-18 (1976) (in case where movant sought to set aside judgment "on the basis of alleged misconduct by Government counsel and by a material witness," holding that "the District Court may entertain a Rule 60(b) motion without leave by this Court," calling the appellate-leave requirement an "unnecessary and undesirable clog on the proceedings," and ordering that "the District Court may take appropriate action without this Court's leave").[1]

## Discussion

A.   Overview.

For the reasons discussed below, this Court finds that Ben Tov's arguments for reopening this matter and vacating the certificate of extraditability are meritorious. Although this Court previously expressed its "great concerns" about the sufficiency of the government's evidence in this matter,[2]

---

[1] *But see Mahone v. Ray*, 326 F.3d 1176, 1180 (11th Cir. 2003) (observing, without citing either *Stone* or *Standard Oil of California*, that "district courts retain jurisdiction after the filing of a notice of appeal to entertain and deny a Rule 60(b) motion," and noting that the trial court "should consider the motion and assess its merits," then, if the trial court "indicate[s] its belief that the arguments raised are meritorious . . . the movant may then petition the court of appeals to remand the matter so as to confer jurisdiction on the district court to grant the motion").

[2] Extradition Hr'g Tr. At 55:6-8 (9/23/05).

4

mindful of the extremely low burden on the government, this Court initially found probable cause to support the charges and issued the certificate of extraditability based upon the government's submissions and argument. That finding was based on this Court's reliance on the three affidavits of the Dominican Republic prosecutor, one of which was attached to the extradition request and two of which the government filed in response to Ben-Tov's arguments and evidence at later points in these proceedings. *See* Gov. Exs. D, M, N. Those three affidavits described the testimony of "FAV" and a bribery scheme involving the importation of 13 vehicles and payment of $622,000 to induce public officials to accept Hyundai Corporation's *Plan Renove* bid. The first of those affidavits attached a customs-declaration form describing the 13 vehicles. This Court accepted the representations in those affidavits as true.

However, the evidence presented to this Court in Ben-Tov's motion to reopen extradition hearing places several of the Dominican Republic's key allegations in serious doubt. Specifically, this Court is no longer able to credit the allegations that (1) Ben-Tov confessed to "FAV;" (2) Ben-Tov used the 13 vehicles listed on the customs-declaration form to bribe *Plan Renove* officials to approve the Huyndai sales contract; or (3) Ben-Tov received $622,000 and distributed it as bribes to *Plan Renove* officials.

Whether characterized as newly discovered evidence or fraud upon the Court, this new evidence goes to the heart of the Dominican Republic's extradition request. The evidence explains that the Dominican Republic's allegations do not support the indicated charges and "obliterates" probable cause.

B.     Findings of Fact in Order Granting Certificate of Extraditability.

This Court's order granting certificate of extraditability [DE 42] was based on several express

5

findings of fact. Those factual findings, in turn, were based on evidence attached to the extradition request and evidence that the government supplemented after the formal request was filed. That evidence consisted of three affidavits from the requesting country's prosecutor, official records of the underlying proceedings in the Dominican Republic, and a customs-declaration form. Based on that evidence, this Court made the following findings, among others, that there was probable cause to believe the following facts were true:

- <u>Bribery with 13 Vehicles</u>: "Ben Tov caused to be imported into the Dominican Republic thirteen Hyundai vehicles including three limousines and three all-terrain vehicles, all of which were transferred to the custody or control of members or representatives of the National Council; (Order at 5).

- "Ben-Tov directly or indirectly, caused to be given numerous vehicles to members of the National Council or their representatives as a bribe or inducement to obtain the contract for sales of vehicles to the Dominican Republic." (*Id.* at 6).

- <u>Testimony of "FAV"</u>: "Ben-Tov acknowledged such facts to a mediator (FAV)." (*Id.* at 5).

- <u>Bribery with $622,000 to Procure Contract</u>: "Ben-Tov agreed to deliver additional bribes in the amount of $622,000 . . . . Reports of auditors confirmed that Ben-Tov had received the $622,000.00 which had previously been approved by the government of the Dominican Republic." (*Id.* at 5)

- "Ben-Tov paid or caused to be paid the sum of $622,000.00 to government officials as an additional bribe to procure the contract for the sale of vehicles to the Dominican Republic" (*id.* at 6).

These findings were central to the Court's conclusion that probable cause existed.

C.     <u>Ben Tov's Newly Discovered Evidence</u>.

Ben-Tov produced the following new evidence to this Court, after the issuance of the certificate of extraditability. As discussed below, this evidence goes to the heart of the requesting country's allegations and casts serious doubt upon the requesting country's allegations to the point

6

that this Court is no longer able to find probable cause to exist. The government, in its opposition to the Court's consideration of Ben-Tov's newly discovered evidence, argues that such evidence was either readily available to Ben-Tov prior to the issuance of the Certificate of Extraditibility and with due diligence by his counsel could have been available at the extradition hearing or that such evidence was irrelevant. The undersigned rejects such assertions by the government for reasons set forth hereinafter.

    1.    Six of the 13 Vehicles Allegedly Used to
           Bribe "Chauffeurs" of Public Officials Are Trucks.

In support of its extradition request, the Dominican Republic attached a computer-printout entitled "Customs Declaration No. 15177," purporting to list the vehicle-identification ("VIN") numbers for 13 vehicles that Ben-Tov allegedly used to bribe Dominican public officials (Gov. Ex. D, Ex. 3; Gov. Ex. G).[3] The Dominican Republic specifically alleged that these 13 vehicles "are registered in the names of persons who are employed as chauffeurs" of public officials responsible for approving *Plan Renove*.[4]

---

[3] The Dominican Republic's extradition request initially contended that "6 vehicles" were used to bribe public officials. *See* Henriquez Aff., ¶ 6 (6/8/05) (Gov. Ex. D, ¶6) ("documental evidence exists of the fact that at least six (6) vehicles were delivered to three persons (chauffeurs) related to the bribed officials"). The Dominican Republic supplemented that request with two additional affidavits from the Dominican prosecutor. The second of those affidavits contends that "13 vehicles" were used to bribe public officials. *See* Henriquez 2d Supp. Affid., ¶ 1 (9/12/05) (Gov. Ex. N, ¶1) ("Our investigation established that … 13 vehicles . . . are registered in the names of persons who are employed as chauffeurs for some functionaries of the Commission."). Regardless of the number, the Dominican Republic contends that the VIN numbers of these cars are listed on "Customs Declaration No. 15177," attached to the Dominican extradition request, and marked as Government Exhibit G at the September 23 extradition hearing. *See* Gov. Ex. G. All of the VIN numbers of the owner-affidavits attached as Composite Exhibit A to Ben-Tov's motion to reopen correspond to the VIN numbers listed on "Customs Declaration No. 15177" submitted by the Dominican Republic and introduced by the United States at the extradition hearing.

[4] *See* Henriquez 2d Supp. Aff., ¶ 1 (9/12/05) (Gov. Ex. N) ("Our investigation established that … 13 vehicles . . . are registered in the names of persons who are employed as chauffeurs for some

Ben-Tov's new evidence demonstrates that six of these vehicles are trucks and unlikely suitable for the particular purpose described in the extradition request. Notably, the requesting country did not reveal or otherwise explain this material fact either in its extradition request or in the subsequent proceedings.

Proof that six of the 13 vehicles are trucks is as follows.

- Ben-Tov produced the shipping documents (bill of lading, commercial invoice and packing list) corresponding to the importation of the 13 vehicles listed on the Dominican Republic's customs-declaration form, by corresponding VIN number.[5]

- The VIN numbers on these shipping documents match the VIN numbers on "Customs Declaration No. 15177" attached by the Dominican Republic to its extradition request as identifying the 13 vehicles used for bribes.

- As discussed at oral argument, the Hyundai Technical Service Bulletin, No. Y-00-S03-PA ("VIN Decoder") (Dec. 22, 2000), *available at* http://www.hyundai.auto.ru/vin.pdf, also indicates that the VIN numbers for six of these vehicles correspond to models that are "truck[s]."

- The shipping documents describe the model names for each of the VIN numbers listed on the "Customs Declaration No. 15177."

- Three of these vehicles are listed on the shipping documents as model "H1 M/BUS."[6]

- The "H1 M/BUS" is a Hyundai H1 truck chassis.

- A photo of the Hyundai H1 truck is available on the Hyundai website.[7]

---

functionaries of the Commission.").

[5] *See* Bill of Lading, Commercial Invoice & Packing List (Ben Tov Ex. B), attached as Comp. Ex. A to Ben-Tov's Motion to Reopen. Citations to "Ben Tov Ex. ___" refer to defense exhibits as marked at the September 23 extradition hearing.

[6] *See* Commercial Invoice, at Ben-Tov's Motion to Reopen, Comp. Ex. A (listing "DESCRIPTION: ... H1 M/BUS ... Unit[s]: 3").

[7] http://worldwide.hyundai-motor.com/common/html/showroom/truck /h1_truck/focus.html

8

- The H1 models do not appear to be cars that could be used to "chauffeur" officials. The government has offered no evidence to explain this discrepancy.

- Three others of these 13 vehicles are listed on the invoice as "H100 TRUCK."[8]

- A photo of the Hyundai H100 Truck is available at the Hyundai website.[9]

- The H100 models also do not appear to be cars that could be used to "chauffeur" officials. The government has offered no evidence to explain this discrepancy.

In sum, of the 13 vehicles corresponding to the "Custom Declaration No. 15177," six are trucks -- unlikely vehicles for the "chauffeurs" of public officials.

### 2. Affidavits from Owners of Five of the Remaining Seven Cars, Eliminate Probable Cause For the Dominican Republic's Allegations

The fact that six of the 13 vehicles allegedly used as bribes for the chauffeurs of deciding public officials are trucks, and the fact that this material information was not contained within the Dominican Republic's extradition request, would tend to undermine, although not necessarily "obliterate," a finding of probable cause on this issue. Ben-Tov, however, also submitted additional evidence refuting these allegations. Taken together, this evidence "obliterates" probable cause that the 13 vehicles were used to bribe public officials. Specifically, of the remaining seven cars, Ben Tov submitted affidavits from the owners of five of them (and also submitted affidavits from owners of three of the H100 Trucks), explaining under oath that they were not used to bribe public officials or their chauffeurs. Accordingly, this "explanatory" evidence shows that all five of these cars are owned by persons unrelated to *Plan Renove*.

---

[8] *See* Commercial Invoice, at Ben-Tov's Motion to Reopen, Comp. Ex. A hereto (listing "DESCRIPTION: ... H100 TRUCK ... Unit[s]: 3").

[9] http://worldwide.hyundai-motor.com/common/html/showroom/truck/h100_truck/focus.html.

9

For each of these vehicles, its owner attests in the attached affidavits that he paid fair value for it and owned it for his own personal use (*i.e.*, not that of a public official). An example of the pertinent language from the affidavits is as follows:

> I purchased from Mr. Shlomo Ben Tov (Sam Goodson) the motor vehicle described as follows . . . [VIN number and description] by paying the full price as set out in the sales agreement.
>
> * * *
>
> I declare that at no time have I been the owner of the specified vehicle on behalf of any third party, but solely and exclusively for personal use. Similarly, I certify that I am not nor have I ever been a driver, salaried worker, representative or employee of any legislator, congressman, public servant or member of the Board of Directors of Plan Renove.

Motion to Reopen, Comp. Ex. B.

Thus, Ben-Tov has offered "explanatory" evidence to establish that 11 of the 13 vehicles (5 cars plus 6 trucks) were not used for bribes. This evidence seriously undermines any confidence in the Dominican Republic's "vehicle-bribe" allegations, and requires a finding that the evidence supporting those allegations does not rise to the level of probable cause.

3.  Unredacted Customs Declaration.

The Dominican Republic also contends that as part of this alleged 13-vehicle-bribe scheme, Ben-Tov avoided paying customs duties when those vehicles were imported in September 2002.[10] To support this allegation, the Dominican Republic attached a print-out of "Customs Declaration No. 15177," discussed above, as an exhibit (Gov Ex. D, Ex. 3; Gov. Ex. G).

---

[10] *See* Tr. of "Writ to Open Trial," attached to Dominican Republic's Request for Extradition [Gov. Ex. E] (Statement of Dominican Prosecutor: "Shlomo Ben-Tov ... maneuvered right from the beginning in order to cheat the Government .... Thirteen vehicles ... were imported by him, which cleared through customs paying only RD $730,000 instead of RD $2,600,000. This amount was used to bribe government officials.").

The Dominican Republic's version of that print-out contains a material alteration that goes to the heart of the Dominican Republic's allegations on this issue. Specifically, the print-out of "Customs Declaration No. 15177" attached to the Dominican Republic's extradition request lacks a critical official certification that appears on the face of the original Customs Declaration. That certification clearly appears on the copy of the otherwise-identical Customs Declaration No. 15177 that Ben-Tov filed with this Court, which was duly authenticated. *See* Motion to Reopen, Exhibit C.

The redacted certification specifically states that the President of the Dominican Republic had accorded Ben Tov a reduction of customs duties on this particular importation of these same 13 vehicles. A translation of the certification is as follows:

> "SPECIAL TREATMENT TO SHLOMO BEN TOV GRANTED BY THE
> PRESIDENT OF THE REPUBLIC, ENG. HIPOLITO MEJIA . . . BY VIRTUE
> OF REQUEST REALIZED THROUGH COMMUNICATION DATED 11/13/02.
>
> /s/ Customs Director"

Motion to Reopen, Ex. C.

The existence of this redaction seriously undermines confidence in the extradition request. That the redaction involves the heart of one of the key allegations in this case, obliterates probable cause on this point.

The government argues that reference to the Customs Declaration is irrelevant since the government has not relied upon, or even argued, such issues. However, the Court finds that such information is indeed relevant since it is indicative of the flaws in the presentations by the Dominican Republic in support of the extradition in this cause.

11

4.  Bills of Lading Demonstrating that
    July 2001 Contract Was Not "Annulled."

The Dominican Republic's theory, as presented by the government, is that Ben Tov imported the 13 vehicles to bribe public officials ***prior to***, and to induce ratification of, Hyundai's contract to sell 1,012 buses and trucks to that country. Thus, the Complaint for Extradition states:

> "These thirteen vehicles were transferred from Sam Goodson to representatives of the National Council ***before the Sales Contract*** with the Government of the Dominican Republic for the 1,012 vehicles ***was drafted***."

Complaint for Extradition, ¶ 5(c) (DE 3); *see also*, Gov. Ex. D, ¶ 56 (Dominican Prosecutor's affidavit submitted in support of extradition request). At the bond proceedings, Ben Tov argued against this timing allegation by submitting evidence that the vehicles were not even imported into the Dominican Republic until September 2002,[11] which was more than a year after the contract was executed, on July 12, 2001.[12]

In response, the government argued that "this testimony was false." Gov't Memo. in Supp't of Extrad'n [DE 32 at 16] (emphasis in original). In support, the United States offered a third affidavit from the Dominican prosecutor. This third affidavit states, without any documentary support, that the July 12, 2001 contract "was annulled," and "a new agreement was negotiated" at a later date. *See* 3d Henriquez Aff., Gov. Ex. N:¶ 2 (9/12/05). It is interesting to note, however, that the government has not presented a copy of the "new agreement," certainly a document that is of

---

[11] *See* Ben Tov Ex. B (bill of lading and packing slip for the importation of these 13 cars, listing identical 13 VIN numbers identified on "Customs Declaration No. 15177," attached to the Dominican Republic's extradition request at Gov. Ex. D, Ex. 3, and offered by the United States at the extradition hearing as Government Exhibit G (Gov. Ex. G)).

[12] *See* Purchase and Sales Contract, Reference No. HDCOMMERCIAL010701, July 12, 2001 (Ben Tov Ex. A).

12

significant importance in this cause.

The actual bills of lading from the shipments, however, all specifically refer to the July 12, 2001 contract. Thus, the actual commercial shipping documents themselves explain that the July 12, 2001 contract appears not to have been "annulled" and indeed was the actual contract that Hyundai Corporation performed. Specifically, the numerous bills of lading corresponding to the buses and trucks that Hyundai Corporation shipped to the Dominican Republic under *Plan Renove* all identify the shipments as corresponding to the precise contract number ("Reference No. HDCOMMERCIAL010701") of the July 12, 2001 contract. *See* Motion to Reopen, Comp. Ex. D.

Accordingly, this Court is unable to find probable cause to believe the Dominican Republic's "timing" theory, namely, that the cars used for the alleged car bribes were imported before the contract was executed.

> 5. The Dominican Republic's Description of
> The "Testimony of FAV" Lacks Probable Cause.

The Dominican Republic's extradition request states that probable cause for the 13 car-bribes is supported by "the testimony of (FAV):"

> To prove the second charge [car bribes] ... the Dominican Republic counts with the testimony of (FAV), who stated to have conversed with Sam Goodson, in which conversation he pointed out that he has imported vehicles to be delivered (bribery influence) to officials in charge of sales.

Henriquez Aff. at 8 (6/8/05) (Gov. Ex. D, 8). This Court finds that the evidence supporting this allegation does not amount to probable cause.

First, this Court finds that "FAV" is Mr. Freddy AguasVivas, a Dominican citizen who testified at the Dominican preliminary hearing. *See* Prel. Hr'g Tr. (Ben Tov Ex. S2:6) (listing "Citizen Freddy Aguasvivas" as "Heard ... in his capacity as witness"). For reasons unknown to this

13

Court the government refuses to acknowledge that FAV and Freddy AguasVivas are one and the same person. The Dominican prosecutor himself summarized Freddy Aguasvivas' testimony at the preliminary hearing precisely as he summarized the testimony of FAV in his affidavit attached to the extradition request, quoted immediately above:

> In accordance with the testimony of Mr. Freddy Aguasvivas, these vehicles were imported for the purpose of bribing public officials.

Prel. Hr'g Tr. (Ben Tov Ex. S2:243).[13]

A thorough reading of the transcript of the Dominican Preliminary Hearing (which was introduced by Ben Tov, not by the government), reveals that Freddy Aguasvivas gave no such testimony concerning any bribes by anyone, including Ben Tov. *Cf.* Prel. Hr'g Tr, Ben Tov Ex. R: 59- 66.

Further, Ben Tov recently filed a sealed affidavit from Mr. Aguasvivas ("FAV") unequivocally rebutting any possible suggestion that he gave incriminatory evidence against Ben Tov and raising serious questions about the nature of the Dominican Republic's investigation. Taken together, this evidence obliterates the Dominican Republic's offer of proof on witness "FAV," allegations upon which this Court previously relied in issuing its certificate of extraditability.

    6.    <u>Evidence of "$622,000" Payment is Not Reliable</u>.

In its memorandum in support of extradition, the government alleged that

---

[13] While the government does not concede this point, *see* DE32:17, upon review of both FAV affidavits and the preliminary-hearing transcript, the government's position is inconsistent with all of the evidence on this point. Accordingly, the assumption that "FAV" is not Freddy Aguasvivas, which assumption the government submits this Court should make in support of a finding of probable cause, is not tenable.

14

>Ben-Tov conspired with representatives of the National Council to obtain a loan of $622,000 as part of the financing of the contract. Those funds were then received by Ben-Tov and distributed as bribes to representatives to the National Council. [DE 32:11].

At the September 23 extradition hearing, Ben-Tov introduced substantial evidence that the "$622,000" was actually $622,398, paid as "country-risk insurance" to a guarantor of the loan and publicly approved by the Dominican Republic legislature. *See* Ben-Tov Exs. G, H, I, J, K, L, Q. While this evidence indicated that the financing transaction was entirely legitimate, and cast serious doubt on the requesting country's allegations on this issue, it still allowed for a scenario in which the loan proceeds were received prior to the approval of the Hyundai contact in July 2001 and prior to the subsequent importation of the Hyundai trucks pursuant to that contract. Accordingly, this Court then found probable cause to exist.

In support of his motion to reopen these proceedings, however, Ben-Tov produced newly discovered evidence that obliterates probable cause on this issue. Ben-Tov filed with this Court bank records indicating that, on December 30, 2005, over two months after this Court issued its certificate of extraditability and while Ben-Tov was detained in the United States without bond, the Dominican Republic made the eighth of 11 payments on the $622,398 promissory note to Ben-Tov's company, Hyundai Americas Corporation, in the amount of $68,447.40. Setting aside the incongruity of the Dominican Republic's continuing to make payments on a note it here alleges was fraudulently obtained and subsequently used for the purpose of funding bribes to government officials – this payment, taken together with the schedule of payments on that promissory note (Ben-Tov Ex. F) all of which <u>post-date</u> the July 2001 contract, "obliterates" probable cause to believe that the payments were "received by Ben-Tov and distributed as bribes to representatives to the National Council" [DE

15

32:11].[14]

D.   Admissibility of Ben-Tov's New Evidence.

The government disputes that Ben-Tov's new evidence is admissible under Federal Rule of Civil Procedure 60(b), arguing that Ben-Tov cannot satisfy the Rule's standard for admitting newly discovered evidence, namely "evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59." Fed. R. Civ. P. 60(b).

This Court finds the government's argument unpersuasive. Due diligence under the Rule is diligence that a reasonable lawyer would exercise. A reasonable lawyer, under these circumstances, would not have discovered the new evidence presented in Ben-Tov's motion to reopen proceedings. Specifically, a duly diligent lawyer would likely have accepted the Dominican Republic's customs-declaration form as the true copy of that document, and could not have been expected to suspect that the form submitted was not in fact a true and accurate copy of the original. Likewise, a duly diligent lawyer would have accepted the Dominican Republic's representations that "FAV" actually testified that Ben-Tov confessed to him, and would not have expected that the requesting country's representations about the preliminary-hearing proceedings were not borne out by the actual transcript. Likewise, a duly diligent lawyer would have accepted the requesting country's allegations that the 13 vehicles were imported before the July 2001 contract was executed and would not have expected that six of the vehicles were trucks, completely inconsistent with the allegations contained in the complaint for extradition. Even if a duly diligent lawyer would have suspected that the requesting country's allegations were false, this Court finds that a duly diligent lawyer would likely not have

---

[14] Indeed, there is no evidence, other than the conclusory allegations contained in the affidavits of the Dominican Republic prosecutor, that any government official received any consideration from Ben-Tov. Those conclusory allegations are inconsistent with all of the evidence now before the Court.

16

been able to secure affidavits from the registered owners of these vehicles prior to a timely extradition hearing. This is especially so given that the requesting country would not identify either the public officials or their "chauffeurs" who allegedly received these vehicles as bribes, further complicating Ben-Tov's efforts at locating explanatory evidence. Finally, no lawyer, even one exercising perfect diligence, could have discovered the December 30, 2005 loan payment - - because it was not made until long after the extradition hearing.

Even if this Court were to find that this evidence could have been discovered before the September 23, 2005 extradition hearing by due diligence, the evidence would still be admissible in this proceeding. Federal Rule of Civil Procedure 60(b)(3) allows consideration of evidence that the prior order was obtained by fraud or misrepresentation. *See* Fed. R. Civ. P. 60(b)(3) (listing "fraud ... misrepresentation, or other misconduct of an adverse party as grounds for granting relief from a final order or proceeding").

Although the Court does not reach the question of whether the Dominican Republic willfully misrepresented evidence or perpetrated a fraud upon this Court, this Court finds that the evidence presented by Ben-Tov could rise to the level of making such a showing, especially in light of the fact that the extradition request includes a document which readily appears to contain a material alteration.[15] Likewise, the requesting country's representations as to the ownership and type of the 13 vehicles, as well as their importation prior to the execution of the July 2001 contract, also could rise to the level of fraud on the Court. Finally, the requesting country's representations about the testimony of "FAV," being directly contrary to the transcript of the preliminary-hearing proceedings, also could rise to the level of fraud on the Court.

---

[15]This Court does not, in any way, attribute any willful or inappropriate conduct or submissions to the office of the United States Attorney.

17

## Conclusion

In sum, Ben-Tov has introduced evidence which casts such serious and substantial doubt upon the validity of the allegations by the requesting country so as to now obliterate probable cause for the extradition upon the charges advanced by the Dominican Republic. Evidence offered by Ben-Tov in support of his motion supports this Court's findings that FAV, based upon his recent affidavit, did not ever make any statements implicating Ben-Tov; that the imported vehicles were not for the purpose of bribes but were acquired through arms length transactions by the purchasers; that the $622,000.00 loan was not for the purpose of bribes but to secure "country-risk insurance" for the loan that had been approved by the Dominican Republic legislature; that the Customs Declaration was presented by the Dominican Republic in support of the extradition, knowing that an official certification had been deleted/omitted, which certification revealed favorable customs duty obligations to Ben-Tov.

It is without question that the purpose of judicial proceedings is to ascertain the truth. It is with such goal in mind that this Court has considered Ben-Tov's Motion to Reopen Proceedings and the government's response in opposition. For reasons stated above and as a result of the Court's findings, this Court has no confidence in the reliability of the submissions of the Dominican Republic in support of its application for the extradition of Shlomo Ben-Tov. The Court further finds that the government has not established probable cause for the extradition of Shlomo Ben-Tove to the Dominican Republic. This Court makes these findings and ruling without prejudice for the Dominican Republic to renew its extradition request at a later date and without prejudice to the government's institution of an investigation or prosecution relating to these allegations in the United States if appropriate. Accordingly, it is hereby

ORDERED AND ADJUDGED that Ben-Tov's Motion to Reopen Extradition Proceedings is GRANTED WITHOUT PREJUDICE. This Court's Certificate of Extraditability [DE 42] entered on October 21, 2005 is VACATED, SET ASIDE, and HELD FOR NAUGHT and the Complaint for Extradition is DENIED and DISMISSED. The Bureau of Prisons and the United States Marshal are directed to release Shlomo Ben-Tov from custody FORTHWITH.

DONE AND ORDERED in Chambers, at Miami, Florida this 22nd day of February, 2006.

BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Sean Paul Cronin, Assistant United States Attorney.
Guy Lewis, Esq.
Michael Tein, Esq.
United States Bureau of Prisons
United States Marshals Service

*Memo*
*From the Chambers*
*of*
*Barry L. Garber*

All parties have been sent copies from chambers.

2/23/05

Carrie Cal...